UNITED STATES of America, Appellee–Cross–Appellant,

v.

Cazim DJELEVIC, aka Qazim Gjeleviq, aka Besim Muriql, aka "Charlie"; Ibis Lajqit, aka Ibish Lajqi, aka Bequim Laiql, aka "Abish"; Gentian Xhunga, aka "Johnnie"; Filje Maria Pepshi, aka Filje Maria Nrecaj; Fadil Kuqi; Jashar Kelemendi; Rustem Muriqi, aka "Ruli", aka "Johnnie"; Flurim Tofaj, Defendants,

Rame J. Pepshi, Defendant–Appellant,

Abdul Rahman Al Houssaine, aka "Diamond", aka "Abdyrraham–Hysem Iysemi", aka Abdyramin Iseni, aka Hyseni Hysen, Defendant–Appellant–Cross–Appellee.

Docket Nos. 97–1156(L), 97–1181(CON), 97–1204(XAP).

United States Court of Appeals, Second Circuit.

Argued Oct. 19, 1998.

Decided Nov. 10, 1998.

David G. Secular, New York, NY, for Defendant–Appellant.

Mark D. Harris, Assistant United States Attorney, New York, NY (Mary Jo White, United States Attorney for the Southern District of New York, Ira M. Feinberg, Assistant United States Attorney, New York, NY, on the brief), for Appellee.

Before: OAKES and WALKER, Circuit Judges, and COTE, District Judge*.

PER CURIAM:

Defendant-appellant Rame J. Pepshi ("Pepshi"), appeals from the judgment of the United States District Court for the Southern District of New York (Jed. S. Rakoff, *District Judge*), convicting him, following a guilty plea, of one count of conspiring to transport stolen goods in interstate commerce, and one count of conspiring to commit bank burglary, both in violation of 18 U.S.C. § 371. Pepshi was sentenced, in principal

part, to 65 months' imprisonment, 18 months of which were to run concurrent with a state sentence imposed in New Jersey, to be followed by three years of supervised release, and $52,000 in restitution.

We discuss in this opinion only Pepshi's claim that he should be entitled to challenge his sentence on the ground that his attorney rendered ineffective assistance of counsel at sentencing, notwithstanding Pepshi's unequivocal waiver of his right to appeal any sentence within the stipulated Sentencing Guidelines range of 57 to 71 months. We address and reject the contentions on appeal of defendant-appellant Abdul Rahman Al Houssaine in a summary order also filed today.

### I.

On October 7, 1996, Pepshi pled guilty pursuant to a written plea agreement to one count of conspiring to transport stolen property in interstate commerce and one count of conspiring to commit bank burglary, both in violation of 18 U.S.C. § 371. With respect to the conspiracy to transport stolen property count, Pepshi admitted that he had agreed in April of 1996 to burglarize a Thriftway Supermarket in Hamilton Township, New Jersey and that he intended to transport the proceeds of the heist back to New York. He also admitted with respect to the count of conspiracy to commit bank burglary, that he had agreed with others to burglarize the Chemical Bank branch in Hauppauge, Long Island, that he had taken steps to carry out the burglary, and that he and his co-conspirators in fact had burglarized the bank and stolen over $50,000.

Pepshi's plea was pursuant to a written plea agreement, dated October 7, 1996. In addition to requiring Pepshi to plead guilty to the two counts just described, the plea agreement contained stipulations concerning what the parties perceived to be the applicable guidelines range under the Sentencing Guidelines. Specifically, the parties agreed that the applicable guideline for Pepshi's of-

---

* The Honorable Denise Cote, District Judge of the United States District Court for the Southern District of New York, sitting by designation.

fenses was U.S.S.G. § 2B2.1, the guideline for burglary. The agreement "[r]ecogniz[ed] that Guideline 2B1.1 [the guideline for theft] would otherwise apply and would provide for grouping of offenses pursuant to § 3D1.2." However, in what appears to be an effort to avoid that result, the agreement provided that the government would "agree[ ] not to seek to use the multiple counting method provided by Guideline 3D1.2." [1]

The agreement also included a stipulation that the base level under § 2B2.1 was level 17, "[b]ecause the offense involved a residence." *See* U.S.S.G. § 2B2.1(a)(1). [2] The parties agreed to the following enhancements: two levels for more than minimal planning, *see* U.S.S.G. § 2B2.1(b)(1); .three levels because the combined loss was more than $50,000 but less than $250,000, *see* U.S.S.G. § 2B2.1(b)(2); and two levels because Pepshi was a manager or supervisor in the criminal activity. [3] The plea agreement further provided for a three-level reduction for acceptance of responsibility pursuant to § 3E1.1 of the Guidelines. As a result of the above stipulations, the parties agreed to an offense level of 21. Based on the information then available, Pepshi was in Criminal History Category IV, which produced a stipulated sentencing range of 57 to 71 months. The agreement also provided that Pepshi's federal sentence was to run concurrent with his state sentence in New Jersey in connection with a 1992 burglary conviction.

Finally, and most importantly for purposes of this appeal, the plea agreement states in relevant part:

It is further agreed (i) that the defendant will neither appeal, nor otherwise litigate

under [28 U.S.C. § 2255] any sentence within or below the stipulated Guidelines ranges set forth above and (ii) that the Government will not appeal any sentence within or above the stipulated Guidelines ranges. This provision is binding on the parties *even if the Court employs a Guidelines analysis different from that stipulated to herein.*

(emphasis added). In an apparent effort to circumvent the plain language of this waiver provision, Pepshi now contends that his sentence should be vacated (1) because he received ineffective assistance of counsel at sentencing given his attorney's failure to seek enforcement of the agreement to avoid the use of multiple grouping analysis in calculating Pepshi's guideline range, and (2) because the district court erred in holding that only 18 months of Pepshi's incarceration would run concurrently with his New Jersey state sentence. The government responds that the defendant is barred from appealing his sentence because he knowingly and voluntarily waived his right to appeal a sentence within the stipulated Guidelines range of 57 to 71 months. We agree.

### II.

▇▇▇ It is by now well-settled that a defendant's knowing and voluntary waiver of his right to appeal a sentence within an agreed upon guideline range is enforceable. *See United States v. Chen,* 127 F.3d 286, 289–90 (2d Cir.1997) (noting that "[t]he right to appeal may be waived as part of a plea agreement," but declining to enforce a waiver that was not knowing and voluntary); *United States v. Rosa,* 123 F.3d 94, 97 (2d Cir.1997) (enforcing voluntary waiver even where the

---

1. Neither party disputes that the plea agreement was in error on this point. The Guidelines expressly provide that § 2B2.1 offenses are not to be grouped together to reach a single loss amount, and thus must be counted as separate groups of offenses subject to the multiple counting rules of § 3D1.4 of the Guidelines.

2. According to the government, while Pepshi's plea involved solely the burglary of commercial buildings, for which § 2B2.1(a)(2) provides a base level of 12, the parties expected the government to establish that Pepshi's relevant conduct included a residential burglary. At sentencing, however, the government accepted the recommendation of the Pre–Sentence Report that the

base level for commercial structures should be applied.

3. The plea agreement cites § 3B1.1(b) as the basis for the two-level "manager or supervisor" enhancement. However, that section, which relates to criminal activity involving five or more participants, provides for a three-level enhancement. Section 3B1.1(c) provides for a two-level enhancement if the criminal activity involved less than five participants. The agreement does not specify whether the parties came to an agreement as to the number of participants involved in the criminal activity.

plea agreement specified that defendant would not appeal any sentence within or below the guidelines range "as determined by the Court"); *United States v. Maher*, 108 F.3d 1513, 1531 (2d Cir.1997) (refusing to address defendants' sentencing contentions where both defendants were sentenced in accordance with their plea agreements); *United States v. Ready*, 82 F.3d 551, 555–57 (2d Cir.1996) (declining to enforce waiver where district court had instructed the defendant that his waiver of the right to appeal was "a limited one"); *United States v. Yemitan*, 70 F.3d 746, 747–48 (2d Cir.1995) (holding that appeal was foreclosed by plea agreement where district court imposed a sentence within the range stipulated by the agreement); *United States v. Salcido–Contreras*, 990 F.2d 51, 53 (2d Cir.1993) (per curiam) ("In no circumstance ... may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement.").

In this case, Pepshi does not contend that his waiver of his right to appeal was not knowing and voluntary. Nor does Pepshi suggest that he received ineffective assistance of counsel in entering the plea agreement, an argument which, we have suggested, might cast doubt on the validity of his waiver. *See Ready*, 82 F.3d at 555 (citing *United States v. Henderson*, 72 F.3d 463, 465 (5th Cir.1995), for proposition that a defendant cannot validly waive right to appeal where defendant claims that plea agreement was entered into with ineffective assistance of counsel). Instead, citing the case of *United States v. Jacobson*, 15 F.3d 19, 23 (2d Cir.1994), Pepshi claims that his waiver should not bar consideration of his appeal because counsel was ineffective not at the time of the plea, but at sentencing. We emphatically reject this contention.

First, *Jacobson* held only that a court's reliance at sentencing on unconstitutional factors such as race or naturalization status is reviewable despite a waiver of appeal. *Jacobson* provides no support for appellant on the facts of this case.

Second, despite his effort to dress up his claim as a violation of the Sixth Amendment, Pepshi in reality is challenging the correctness of his sentence under the Sentencing Guidelines, and is therefore barred by the plain language of the waiver contained in his plea agreement with the government. Instead of claiming directly that the district court should have reduced his guidelines range two levels because the grouping rules of § 3D1.4 should not be applied, or that he should have received only a two-level and not a three-level enhancement for his role in the offense, Pepshi claims that his attorney was ineffective for failing to make these precise arguments at sentencing. He does so, despite the fact that the waiver provision specifically instructed that there would be no appeal "even if the Court employs a Guidelines analysis different from that stipulated to herein." If we were to allow a claim of ineffective assistance of counsel at sentencing as a means of circumventing plain language in a waiver agreement, the waiver of appeal provision would be rendered meaningless. This we decline to do. "[T]he waiver provision is a very important part of the agreement—the Government's motivating purpose, decreased effort and expense of protracted litigation, is not well-met if the defendant is permitted to appeal that to which he has agreed." *Rosa*, 123 F.3d at 97. Accordingly, we do not reach the merits of Pepshi's ineffectiveness claim. Similarly, because he has waived his right to appeal it, we decline to review Pepshi's second claim, that the district court abused its discretion in making only 18 months of his sentence concurrent.

## CONCLUSION

For the reasons set forth above, the judgment of the district court is affirmed.